204 So.2d 609 (1967)
Eldridge TREADWAY
v.
The STATE FARM INSURANCE COMPANY and the Commercial Union-North British Group Insurance Company (Columbia Casualty Company).
No. 2761.
Court of Appeal of Louisiana, Fourth Circuit.
December 4, 1967.
*610 Blake West, New Orleans, for Commercial Union-North British Group Ins. Co., and/or Columbia Casualty Co., defendants-appellees.
Ben C. Toledano, Porteous & Johnson, New Orleans, for The State Farm Ins. Co., defendant-appellee.
Nicholas A. Danna, Jr., Joseph J. Laura, Jr., New Orleans, for Eldridge Treadway, plaintiff-appellant.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
CHASEZ, Judge.
This is an action in tort arising from an automobile collision at the controlled intersection *611 of St. Bernard Highway and Rowley Boulevard. The accident occurred on June 30, 1961, a clear, dry day, at approximately 1:20 P.M. At the intersection with Rowley Blvd., St. Bernard is a divided highway with two lanes going toward New Orleans and two lanes going toward Chalmette. There is also a controlled left-turn lane for turning onto Rowley Boulevard from an approach on the Chalmette bound lanes of St. Bernard. The accident occurred as Mrs. Slagle, driver of an automobile stopped in the left-turn lane of the Chalmette bound lanes, attempted to cross the New Orleans bound lanes of St. Bernard onto Rowley Boulevard. Mrs. Slagle's automobile was struck by an automobile driven by Lionel Guerra as he went through the intersection in the innermost lane of the New Orleans bound lanes of St. Bernard.
The collision resulted in injuries to both drivers and Mr. Eldridge Treadway, guest passenger in Mr. Guerra's automobile. Suits were filed by each of these individuals and they were consolidated for trial. Of the three, only Mr. Eldridge Treadway, guest passenger of Lionel Guerra, has continued his suit on appeal. Named defendants in this suit are The State Farm Ins. Co., insurer of Mrs. Slagle, and Commercial Union-North British Group Insurance Company and/or Columbia Casualty Company, insurer of Mr. Guerra. The two suits which were not appealed were decided in the following manner: Louise Brizzolara Slagle and Wayne Slagle v. Lionel Guerra and Columbia Casualty Company; judgment for plaintiffs in the sum of $1,900.00 for Mrs. Slagle and $850.00 for Wayne Slagle; Lionel Guerra and Columbia Casualty Company v. State Farm Insurance Company, judgment for defendant; plaintiff's claim dismissed.
On appeal Mr. Treadway seeks review of the judgment which denied him recovery as a guest passenger. Recovery should properly be granted to him if it can be determined that either one driver individually, or both drivers contributorily, caused the accident provided there is no theory of law on which the guest passenger may be barred from recovery by his own act or omission. The initial task then before this court is to inquire into the acts of the parties to determine the cause of the accident.
The trial court found Mrs. Slagle free of negligence in that it granted her relief from Mr. Guerra's insurers and dismissed his claim against her insurer. The record strongly supports the conclusion that Mrs. Slagle took the necessary precautions to cross this intersection. There is no question that she had the green light to make the left turn onto Rowley. Mrs. Slagle and a disinterested witness, Mrs. Thelma Deano, who was stopped behind her, both testified that she had come to a stop in the left turn lane on St. Bernard Ave., waited until the green arrow signalled a left turn was permitted, and then slowly made her way across the New Orleans bound lanes of St. Bernard Highway towards Rowley Boulevard. Also Mrs. Slagle testified that she did not begin her turn until after she had noticed a truck having come to a stop in the outside lane of St. Bernard. Several other witnesses verified her statement that the truck had stopped at the intersection at this time. Thus, having observed the green arrow permitting a left turn and the opposing traffic beginning to stop in apparent obedience to the other traffic controls, Mrs. Slagle proceeded across the intersection with the benefit of every necessary precaution and the apparent right of way. There is no basis on which we could find Mrs. Slagle negligent and we cannot hold her insurer liable for injuries resulting from this collision. Therefore Mr. Treadway's claim must fail against State Farm Mutual Insurance Co., and the judgment of the lower court with respect to this co-defendant is deemed correct.
Mr. Guerra, the driver who was determined to have been negligent by the lower court, did not appeal that judgment. Accordingly, we are inclined to attach great weight to that final judgment unless manifest *612 error can be shown in finding of fact and conclusion made therefrom. In addition to the presumption given that judgment, the appellant does not allege the court erred in finding Mr. Guerra negligent, nor does the evidence and testimony indicate that Mr. Guerra should be released from liability on appeal.
Although the testimony is inconsistent as to whether Mr. Guerra could have had a green light, the sum of all the factual data revealed by testimony leads us to conclude that the light must have been red. Only Mr. Guerra and Mr. Treadway were in a position to observe the light which controlled the New Orleans bound lanes of St. Bernard. Mr. Guerra stated that he observed a green light and continued to observe it at least until he was 25 feet from the crossing. Mr. Treadway verified that statement, but he had taken his eyes off the light some 100 feet before they reached the intersection. Mr. Treadway further stated that the light could have changed after he had looked away from the light. Thus, of these two witnesses, only Mr. Guerra's testimony is pertinent; Mr. Treadway's testimony serves to establish only that the light was green as Mr. Guerra was some 100 feet from the intersection.
Opposed to Mr. Guerra's testimony that the light was green, three witnesses testified that a truck which was approaching the intersection in the outside lane of the New Orleans bound lanes of St. Bernard had stopped when the light should have turned red. Mrs. Slagle waiting in the left-turn lane and Mrs. Thelma Deano behind her both testified that the truck had come to a stop just before the green arrow signalled a turn was permitted. Also Mr. Fourroux, stopped at a red light on Rowley Blvd., stated that the truck had stopped at the intersection at a time when the light would have been red on the New Orleans bound lanes of St. Bernard. Thus, excepting Mr. Guerra's testimony, the signals controlling this intersection at the time of the accident were indicated as follows: A green arrow in the left turn lane of St. Bernard, a red light on Rowley Blvd. and a red light on the New Orleans bound lanes of St. Bernard. Although no disinterested witnesses testified that they saw a red light for Mr. Guerra, we are impressed with the fact that the truck stopped at the exact time the light should have turned red.
Counsel for Columbia Casualty Company did produce a witness who testified that he thought the signal lights were malfunctioning some time before the accident, but we do not attach any significance to this testimony as it does not relate to the time of the accident. Also the facts as testified to by this witness would not inevitably lead to the conclusion that the lights were malfunctioning even if he had passed the intersection at the exact time of the accident.
The conflict in testimony as to whether the light was red presents the same type problem as was considered in Nelson v. Zurich Insurance Company, 247 La. 438, 172 So.2d 70. The language applicable to this case is taken from page 72 of the opinion.
"[1] From the foregoing, it is obvious that the opposed versions are irreconcilable, hence we must resort to the application of the well recognized rule that: `Where witnesses differ, the courts should reconcile, if possible, the apparent contradictions their testimony presents. If this cannot be done, then the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration, if any, and the degree of proof required.' Fridge v. Talbert, 180 La. 937, 158 So. 209."
From all the evidence presented in this case we are led to conclude that Mr. Guerra probably had his attention diverted from the signal and was mistaken as to the color of the light as he entered the intersection. The circumstances of the accident as related by all the other witnesses and *613 the unappealed conclusion of fact by the trial judge leaves us no choice but to find Mr. Guerra negligent in crossing the intersection and this negligence was the proximate cause of the injuries complained of.
The negligent host driver is liable for injuries sustained by his guest passenger and recovery should properly be granted Mr. Treadway, provided there is no legal bar to his claim. The well established duty of the host driver is stated in Fontana v. State Farm Mutual Automobile Ins. Co., La.App., 173 So.2d 284. On page 288 the court recites the rule:
"[3,4] The driver of an automobile owes to his guest passenger the duty of exercising ordinary and reasonable care for his safety, and this duty exists with respect to the maintenance of proper speed and control of the vehicle. 60 C.J.S. Motor Vehicles §§ 397 and 399(1), pp. 975 and 977."
Although the lower court denied the guest passenger's claim, we find no basis on which to affirm that decision at this level. Contributory negligence was alleged in Columbia Casualty Company's answer to the original petition, but this defense was not actively pursued at the trial court, nor can we find facts which would support such a conclusion at the level of appeal. There is no proof of contributory negligence which would bar Mr. Treadway's recovery. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, White v. State Farm Mut. Auto. Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338. No other theory of law such as Mr. Treadway's assuming the risk or his taking part in a joint venture has been presented, nor can we find any other basis on which recovery might be denied the guest passenger. There is some indication that the trial court may have dismissed Mr. Treadway's claim on a theory of judicial confession, but this rule is of no effect in the case at bar. See Jackson v. Gulf Insurance Co., 250 La. 819, 199 So.2d 886. We must conclude then that Mr. Treadway, the guest passenger, has a right to recover from the party whose negligence caused his injury.

QUANTUM
Mr. Treadway was rather extensively injured in the accident and since the date of the injury he has been unable to continue his former work as a commercial fisherman. Dr. Bertucci, the physician who treated Mr. Treadway immediately afterwards, attributed the following injuries to the accident: compression fracture of the fourth lumbar vertebra, marked contusion of the middle of the left forearm with a large hematoma formation, contusion or bruise of the head, and nervous trauma and shock. Because of these injuries he had treated Mr. Treadway periodically for one year after the accident. At the end of one year Dr. Bertucci advised Mr. Treadway that he had reached his maximum improvement, and he was unable to be of further help except for heat treatment and mild exercises. It should be noted that even though Mr. Treadway had reached this stage in treatment, he still complained of difficulty in his back and pain localized in the lumbar region.
The testimony of Dr. Bertucci is pertinent as to the type residual disability suffered by Mr. Treadway, as noted after one year of treatment. In the following testimony the questions are asked by Mr. Laura, attorney for plaintiff:
"Q. Would you please state the date of your last visit?
"A. June 15, 1962.
"Q. Would you please state what that residual was, Doctor?
"A. By "residual", you mean what I found on examination?
"Q. Yes, sir.
"A. That there was tenderness over the lower lumbar vertebrae, and limitation of motion in flexion, extension, and lateral bending both to left *614 and right, with some evidence of paravertebral muscle spasm. The muscles adjacent to this area were in a state of spasm."
Dr. Paul Robertson, a radiologist who examined Mr. Treadway, confirmed Dr. Bertucci's diagnosis with respect to the compression fracture of the fourth lumbar vertebra. This diagnosis was made by use of x-ray techniques. Dr. Robertson also found evidence of Paget's Disease affecting the bony structure of the spinal column, but we cannot conclude that the existence of Paget's Disease, as confirmed by other doctors in the record, bears any significance to the injury received by Mr. Treadway. The injury for which he will recover was caused by trauma received in the accident, e. g. the compression fracture and the resultant disability.
Dr. Kitziger, an orthopedic surgeon, examined Mr. Treadway in 1962. He found no objective evidence which would explain Mr. Treadway's symptoms. He did, however, note tenderness in percussion in the high lumbar region. He also observed what he described as mild lipping of the bodies of the dorsal and lumbar vertebrae. He finally concluded that the x-rays taken under his direction were suggestive of Paget's Disease and showed no traumatic bony pathology.
In reaching a conclusion as to the extent of the injuries received by Mr. Treadway, we are constrained to accept the evidence offered by Dr. Bertucci, the attending physician. Of the three doctors presented for trial, two of them found objective evidence of the trauma, while the third found only subjective indicia of injury. We cannot overlook the fact that he required treatment for one year after the accident, and even after it was discontinued on a regular basis, he still experienced pain and discomfort. We are also impressed by the wisdom of the rule expressed in Johnson v. R. P. Farnsworth and Company, La.App., 186 So.2d 405 on page 409:
"The testimony of a treating physician who has had the benefit of repeated examinations and sustained observation of a patient under his direct care and treatment is to be accorded greater weight and probative value than that of a physician who has not undertaken to treat the patient but merely to examine him a few times preparatory to giving expert testimony regarding the patient's condition."
Therefore, we conclude that Mr. Treadway suffered a permanent disability to the extent that he had to abandon his former occupation as a commercial fisherman and seek out a new source of employment, which doesn't require as much physical exertion. He has lost some income since the accident and will lose some future income. His medical expenses resulting from the accident are in the amount of $973.00. He is entitled to an award for these special damages plus, of course, a substantial sum for pain and suffering, or a total in excess of $10,000.00. But as $10,000.00 is the policy limit, and the liability limit of the sole defendant liable to Mr. Treadway in this suit, Columbia Casualty Company, we will limit the judgment against Columbia to that sum.
For the reasons assigned, it is ordered that the judgment appealed from be reversed only insofar as it dismisses appellant's suit against Columbia Casualty Company and assesses costs against plaintiff-appellant. Accordingly, the judgment is amended so as to order, and it is now ordered, that there be judgment in favor of plaintiff, Eldridge Treadway, and against the defendant, Columbia Casualty Company in the full sum of $10,000.00, with legal interest thereon from the date of judicial demand until paid; all costs in the trial court and in this court to be paid by defendant, Columbia Casualty Company. As thus amended the judgment appealed from is affirmed.
Reversed in part; amended; and affirmed in part.