STOULIG, Judge.
Plaintiff, Silverio Martinez, obtained a judgment awarding him workmen’s compensation benefits of $49 per week for a period not to exceed 500 weeks plus medical expenses, on a finding he suffered a disabling back injury sustained in the course and scope of his employment as a grinder. Defendants, Equitable Equipment Company, his employer, and its insurer, Fidelity & Casualty Company of New York, have appealed. We affirm.
Defendants concede plaintiff was injured on the job on July 31, 1972. His work entailed grinding rough edges of welded metal to soften them. He used machinery weighing approximately 10 pounds that was connected to an air supply by hoses. He was injured when a hose became disconnected as he was pulling against it in the course of setting up his equipment. He fell backward and struck his back.
That same day, plaintiff, on his employer’s referral, consulted Dr. J. Terry Se-gura, who treated him for his back condition until November 20, 1972. His medical report, admitted in evidence in lieu of his testimony, only confuses the picture because his factual history is inaccurate, his diagnosis of “acute cervical strain” is questionable because the complaints of pain refer to the low back area, and he repeatedly suggests plaintiff return to work without discharging him. Undoubtedly some of the confusion is due to the fact that Martinez’s native tongue is Spanish and he is not articulate in English conversation.
In written reasons for judgment, the trial judge noted factual discrepancies in the report. To illustrate, it recites plaintiff reinjured himself in October 1972 while changing a tire, when in fact, a min *636 ister acquainted with the Martinez family was called and he changed the tire.
In any event, one week after his discharge by Dr. Segura, he consulted Dr. Raoul Rodriguez, an orthopedist, who diagnosed a lumbar sprain. Dr. Rodriguez examined plaintiff eight times between November 27, 1972 and July 19, 1973 and prescribed extensive physical therapy. After his last visit, Dr. Rodriguez concluded he could do nothing further to improve plaintiff’s condition; therefore, he discharged him with the suggestion he attempt lighter work. This orthopedist unequivocally said he was incapable of performing his duties as a grinder as of July 19, 1973, and he expressed the hope that plaintiff might one day regain the capacity to perform the work he could do before he was injured.
In March 1974, still complaining of pain, plaintiff consulted Dr. Pedro Angulo, a general practitioner, who was treating him on the day of the trial. Dr. Angulo concluded plaintiff’s disability was incurred as a result of the July 31, 1972 accident and he diagnosed the cause as “fibrositis” or osteoarthritis, traumatically induced. Dr. Rodriguez never heard of “fibrositis,” a condition caused by scar tissue pressing on nerves, and stated that he thought either diagnosis was highly improbable.
To some extent there is a conflict in the medical testimony. The thrust of appellants’ argument is that the trial court erred in assigning more weight to the testimony of the general practitioner than to the findings of the two specialists and as a result the plaintiff has failed to establish his claim of disability by a preponderance of the medical evidence. In support of their position, defendants rely upon the case of Knighten v. Am Amusement Company, 272 So.2d 60 (La.App. 4th Cir. 1973), which capsulizes the jurisprudence governing the burden of proof in compensation cases, the probative value of medical testimony of specialists, vis-a-vis general practitioners, and the weight to be assigned the testimony of the treating physician as opposed to the physician who makes a subsequent examination for the evaluation of disability only. It held:
“The established rule is that in compensation cases, as in other cases, plaintiff bears the burden of proving his claim with legal certainty by a preponderance of the competent evidence. Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286; Dobard v. R. Theriot Liquor Stores Inc., La.App., 195 So.2d 350. It is also generally true that the testimony of a specialist as to matters which fall within his field of specialization is entitled to greater weight than that of another practitioner who is not a specialist in that field. Blue v. Kinney Company, La.App., 256 So.2d 145; Davis v. Lesnack, La.App., 205 So.2d 77; Prier v. Massman Construction Company, La.App., 205 So.2d 109; Manning v. Herrin Transportation Company, La.App., 201 So.2d 314. It is further generally true that the testimony of a physician who examines and treats the injured party is entitled to greater weight than that of a physician who only examines the party at a later date. Lotz v. Jamerson Hardware Store, La.App., 211 So.2d 391; Vidrine v. United States Fidelity & Guaranty Co., La.App., 205 So.2d 178; Treadway v. State Farm Insurance Company, La.App., 204 So.2d 609; Meche v. Maryland Casualty Company, La.App., 204 So.2d 719.” 272 So.2d at 64.
However in those instances where disability is predicated almost exclusively on the subjective complaints of pain, unsupported by any objective clinical, organic, or pathological findings, the Supreme Court has limited the probative value to be assigned to the expert medical testimony by subjecting its evaluation to the trial court’s determination of the credibility of the lay witnesses. In the case of Williams v. Hudson East, 261 La. 959, 261 So.2d 629, 631 *637 (1972), the Court, speaking through Justice Tate, held:
“A medical witness may possess a peculiar competence to testify on questions of medical causation and of possible relation of symptoms to the medical injury.. His opinion as to the degree of residual pain, or its legal consequences, is not necessarily as persuasive. 3 Larson, Workmen’s Compensation Law, Sections 79.50-79.54 (1971).
“Proof of disability arising by reason of subjective pain must of necessity depend to a great extent upon the trial court’s evaluation of the truthfulness of the claimant’s complaints in the light of the entire record of medical and lay testimony. Thus, a medical estimate of the degree of pain must be evaluated in the context of such entire record, and a medical opinion as to whether a permanent disability is partial or total must yield to the legal test thereof.”
The claimant bears the burden of proving that he is totally and permanently disabled. The testimony of the two expert orthopedic doctors, George Berkett and Raoul Rodriguez, should be accorded greater weight than that of Dr. Pedro Angulo, a general practitioner. As between the two orthopedists, the testimony of Dr. Rodriguez, one of the treating physicians, should be assigned greater probative value than that of Dr. Berkett, whose examination was for the purpose of evaluation. Finally, should the record sustain the conclusion that the experts were unable to find any organic or pathological basis — in other words, objective symptoms — for plaintiff’s subjective complaints of pain, then the credibility call of the trial judge as to the lay testimony must prevail.
Even disregarding the testimony of Dr. Angulo, the medical evidence of Dr. Rodriguez supports the judgment for plaintiff. It is true that orthopedist Dr. George Berkett rendered a contrary opinion. He examined plaintiff on two occasions, first on November 9, 1972 (before Dr. Rodriguez began treatment) and next on February 28, 1974 (after Dr. Rodriguez had discharged plaintiff as having reached maximum recovery). His findings on each examination were identical. He testified plaintiff’s complaints of pain were exaggerated and his response to certain tests had no medical basis. In short he suggested plaintiff was either a malingerer or had problems that were psychological, not physiological, in origin.
Had Dr. Rodriguez not administered a nine-month course of medication-physical therapy treatment after Dr. Berkett’s first examination, we might attach more significance to Dr. Berkett’s inferences. Both counsel and the trial court recognized the reputation Dr. Rodriguez enjoys in the community as a qualified orthopedist, and we cannot subscribe to a result that suggests he would administer treatment for a nonexistent problem.
The lay testimony of the family minister, a friend and the plaintiff’s daughter confirm he was free from pain before the accident and has since that time been extremely limited in his activities because he is unable to walk normally or engage in activities requiring bending and lifting. We conclude the medical evidence establishes he was disabled as of the date of trial.
In his written reasons for judgment after concluding that the plaintiff is presently totally disabled from his job-related injury, the trial judge candidly acknowledged that he was unable to determine if the disability is permanent or not. He stated, “It has existed, but how long it will continue remains to be seen.” He then properly concluded that the plaintiff is totally and permanently disabled and entitled to 500 weeks compensation,[1] noting the right of *638 the employer to have the claimant reexamined and his disability medically evaluated in six months.
For the reasons assigned, the judgment appealed from is affirmed at defendants’ cost.

AFFIRMED.

. “When a claimant seeking workmen’s compensation is disabled at the time of the trial, and the evidence is inconclusive regarding the degree of his recovery, it has been the practice *638 of our courts to apply LSA-Jt.S. 23 :1331 and award compensation for the maximum number of weeks allowed for permanent disability, reserving to the defendant the right to examine the plaintiff and revise the judgment after six months in the event the disability should terminate or lessen.” Husband v. Insurance Company of North America, 284 So. 2d 787, 789 (La.App. 4th Cir. 1973). See also Levine v. Liberty Mutual Insurance Company, 305 So.2d 665 (La.App. 3rd Cir. 1974) and Bourgeois v. Fireman's Insurance Co. of Newark, N. J., 316 So.2d 3 (La.App. 1st Cir. 1975).